IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JAMES DILWITH**                                                                   **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO.** 2:25-cv-69-HSO-BWR

**SHELL EXPLORATION & PRODUCTION COMPANY**             **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, James Dilwith, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages of violations of his rights pursuant to the Family and Medical Leave Act (FMLA) for interference, violations of his rights pursuant to the Family and Medical Leave Act (FMLA) for retaliation, violations of his rights pursuant to Title VII of the Civil Rights Act of 1964 for race discrimination, violation of his rights pursuant to 42 U.S.C. § 1981 for race discrimination, and violations of his rights pursuant to the Age Discrimination in Employment Act (ADEA) for age discrimination against the Defendant, Shell Exploration & Production Company. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, James Dilwith, is a male resident of Lamar County, Mississippi.

2. Defendant, Shell Exploration & Production Company, may be served with process by serving its registered agent, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction pursuant to the Family and Medical Leave Act (FMLA), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and

the Age Discrimination in Employment Act (ADEA).

4. This Court has subject matter jurisdiction and venue is proper in this Court. Plaintiff filed a Charge of Discrimination with the EEOC on February 22, 2024, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on February 27, 2025, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right to Sue.

## STATEMENT OF FACTS

5. Plaintiff is a 59-year-old male Native Hawaiian/Pacific Islander resident of Lamar County, Mississippi.

6. Plaintiff was hired on November 10, 2013, as a System Specialist at Shell Exploration & Production Company (SEPC).

7. By early 2023, Plaintiff was working at the Olympus asset.

8. Beginning on or around March 28, 2023, Plaintiff took FMLA leave to address various cardiac related medical problems he was having.

9. On July 15, 2023, Plaintiff was available to return to work from FMLA leave; however, SEPC did not allow Plaintiff to return to my previous worksite, i.e., the Olympus asset.

10. On August 10, 2023, Supervisor James Arrington phoned Plaintiff and informed him that he was receiving a write-up, allegedly for bullying or 'being short' with co-workers when they asked him questions.

11. Allegedly because of Plaintiff's actions, he was transferred to a different platform, i.e., the Stones asset.

12. This transfer amounted to a significant cut in pay and to a situation where Plaintiff was, from that point onward, unable to work as much overtime as he had previously.

13. Plaintiff contends the cut in pay amounts to approximately $3,000 per month.

14. Plaintiff has learned that his previous position, i.e., the one on the Olympus asset, has been replaced by a substantially younger and less experienced and qualified candidate, Josh Showles (white male in late 20s/early 30s).

15. On February 22, 2024, Plaintiff filed an EEOC Charge of race and age discrimination against SEPC.

16. On April 17, 2024, in response to Plaintiff's Charge, SEPC submitted a Position Statement to the EEOC.

17. SEPC's Position Statement alleges that, "Plaintiff is a current Shell employee. He was hired on November 7, 2013, as a Technician 4 at the Olympus asset and continued in that role until July 2, 2017, when he became a Systems Specialist 1. On February 23, 2020, Plaintiff moved to a position as Advisor 2 until August 20, 2023, when he was moved to the Stones asset and became a System Specialist 1. These positions have different pay levels which are based on experience and qualifications developed by working at a particular asset. These various positions that Plaintiff has held are focused on the operations of the offshore platform and are individual contributor roles, not supervisory positions."

18. Plaintiff contends that although in general these positions have different pay levels and are based on experience and qualifications, it is understandably the norm for

3

personnel to expect either to retain their current pay or receive an increase in pay when they are moved to other assets or platforms."

19. Plaintiff further contends that this allegation omits the fact that Plaintiff was transferred to the Stones asset after taking a continuous period of FMLA leave, i.e., from late March 2023 until mid-July 2023 and then waiting almost another month for SEPC to return him to work.

20. After Plaintiff notified SEPC that he was ready to return to work (i.e., July 15, 2023), he received no information from SEPC until August 10, 2023, when Mr. Arrington alleged that Plaintiff was being issued a verbal reprimand for bullying or 'being short' with co-workers.

21. At that same time, Mr. Arrington informed Plaintiff that he was being transferred to the Stones asset.

22. Notably, this allegation that Plaintiff was bullying or being short with co-workers was not considered worthy of a write up at the time of the incident, i.e., late March 2023.

23. Only after Plaintiff had taken a continuous period of FMLA leave and informed SEPC that he was ready to return to work – only then and after nearly another month (from July 15th to August 10th) did SEPC decide that the incident in late March 2023 was worthy of issuing a verbal reprimand.

24. Plaintiff contends this defies logic and credulity.

25. Plaintiff asserts this action by SEPC, and the pay cut associated with the transfer to the Stones asset, constituted retaliation against him due to his use of FMLA leave.

4

26. SEPC's Position Statement alleges that, "On March 26, 2023, two employees brought concerns to Olympus Leadership about Plaintiff for negative and demeaning comments that Plaintiff made to them. One employee also raised concerns about Plaintiff's use of expletives when the employee had questions. These employees felt that they were not treated with dignity and respect by Plaintiff. The employees' negative interactions with Plaintiff had been ongoing, but they felt uncomfortable bringing their concerns to leadership until this point. As a result of the concerns raised, on March 27, 2023, multiple members of the Olympus asset's leadership team met with Plaintiff to have a conversation with him about his communication skills, particularly the negative comments that his co-workers alleged he made to them. Once this conversation was over, Plaintiff went back to work. Later that day, Plaintiff asked if he could go home because he could not focus on his job after the conversation. Plaintiff was put on the flight itinerary to leave the asset the next day, March 28. The Company is not aware that Plaintiff mentioned or reported any medical issues that he may have been experiencing on or around March 28. After retuning onshore, Plaintiff took a leave of absence from March 29 until July 24, 2023."

27. Plaintiff concedes that during late March 2023, Mr. Arrington discussed with him a minor conflict between Plaintiff and two other employees.

28. In a work setting, disagreements are not uncommon and are generally worked through as needed, as was the case in late March 2023. Around March 27, 2023, two other supervisors (Tommy Washington and Chris Harrison) also addressed the conflict with Plaintiff.

29. At no point during any of these conversations did anyone inform Plaintiff

5

that the discussion constituted a verbal reprimand, and once these discussions were over Plaintiff considered the matter resolved.

30. It should also be noted that Plaintiff has consistently received very positive job performance reviews and overall, he has been labeled as "Exceeds Expectations".

31. Plaintiff's supervisors have also commented that Plaintiff "consistently demonstrates strong personal/interpersonal skills and behaviors" and that he "serves as a role model" for other employees.

32. Plaintiff contends that on March 28, 2023, at 4:40am, he reported his medical condition to Mr. Arrington. On March 30, 2023, at 11:44am, Plaintiff further notified Mr. Arrington that due to his medical condition, he would not be able to work for at least eight weeks.

33. At that time, Mr. Arrington instructed Plaintiff to notify the Shell Health Nurse and Reed Group, and Plaintiff complied with this instruction.

34. SEPC's Position Statement alleges that, "Plaintiff was not medically cleared by Shell Health to return to work until July 24, 2023 (Exhibit D); however, because of the scheduled flight itineraries to go offshore, the first flight available for Plaintiff's return was on August 10, 2023. This is due to the 14 days on / 14 days off rotation of crews for offshore work. Plaintiff's crew was scheduled to go back onshore on July 27, 2023, and would not be returning offshore to the asset again until August 10, 2023. (Exhibit E - In the Crew Calendar exhibit, days highlighted in yellow were days on shore and off work. Days in white were days working offshore. In July, the crew worked 14 days offshore from July 13 to July 26. In August, they worked offshore August 10 through August 23.)"

35. Plaintiff contends that the flight dates in this allegation are for the Stones

asset.

36. The flight dates were different for the Olympus asset. Plaintiff contends that he could have returned to work sooner if he had been allowed to return to his previous assignment, i.e., the Olympus asset.

37. SEPC's Position Statement alleges that, "On August 10, 2023, Mr. James Arrington, Maintenance Supervisor, had a conversation with Plaintiff and communicated that Plaintiff would be receiving a Verbal Warning with areas to improve being:

1) Respectful communications towards others;

2) Delivery of message without verbally disrespecting others; and

3) Coaching and mentoring others with a difference of opinion without belittling them.

Verbal Warnings are the first step in Shell's Managing Individual Underperformance process, as noted in Section D above. The Verbal Warning that Plaintiff received on August 10 was a continuation of the coaching that he received from Olympus asset leadership on May 27. Employee underperformance management is paused while an employee is on leave, but the process resumes when the employee returns to work."

38. As stated above, in March 2023, during the discussions about the minor conflict between Plaintiff and the other employees, it was never mentioned that Plaintiff was being 'coached' or verbally reprimanded or that he would be issued any further reprimand later.

39. Rather, every indication was that the matter was resolved with those discussions.

40. It was not until five months later that SEPC alleged that this incident merited a verbal reprimand.

41. Plaintiff further contends that even if it merited a verbal reprimand, this still did not warrant moving him to a different asset.

42. Plaintiff contends this allegation is a pretext for retaliation against him for using FMLA leave.

43. SEPC's Position Statement alleges that, "Plaintiff was transferred from the Olympus asset to the Stones asset due to his behavior toward co-workers. Plaintiff's behavior made other employees feel psychologically unsafe on an asset that is in the middle of the Gulf of Mexico, far from anyone other than those co-workers assigned to the same 14-day shift. The goal of the transfer was to allow Plaintiff a fresh start on a new asset. Shell promotes an inclusive, harassment free work environment for all Shell employees (*see* Exhibits A and B). Based on Plaintiff's behavior toward others, Olympus Operations Leadership felt that this change was necessary as other co-workers did not feel that they were in a psychologically safe environment while working with Plaintiff."

44. Plaintiff contends this allegation is exaggerated to the extent of being misleading.

45. The conversations that took place in March 2023 related to a minor disagreement between Plaintiff and two other employees, but there was never any allegation that anyone felt psychologically unsafe.

46. Moreover, no one ever inferred in those discussions that Plaintiff was being coached or verbally reprimanded, and the matter was ostensibly resolved at that time.

47. Furthermore, no statements were made at that time to Plaintiff about the idea of his being transferred to a different asset.

48. He was never informed about any plan to transfer him to a different asset

until August 10, 2023.

49. SEPC's Position Statement alleges that, "Although Plaintiff receives overtime pay, overtime is not a guarantee at any asset and varies based on different factors, including the needs of the particular asset, personnel availability, and production variables. Plaintiff's annual pay was different when he moved to the Stones asset but did not amount to a $3,000 per month difference. The difference in annual pay was approximately $4,700, which is just over $390 per month."

50. Plaintiff contends that between January 1, 2023 and April 1, 2023, he earned $10,471.60 in overtime while on the Olympus asset.

51. By contrast, between January 1, 2024 and April 1, 2024, he earned only $2,171.96 in overtime on the Stones asset.

52. This amounts to a difference of $8,299.64 for three months.

53. By extension, this amounts to an annual difference of $33,198.56.

54. Plaintiff also received a 10% bonus on his overtime earnings, which is an additional $3,319.86.

55. If the advisor demotion of $4,700 is added, the total amount rises to $41,218.42.

56. In SEPC's policy statement about FMLA, it states that employees returning from FMLA are entitled to equivalent pay, and it specifically notes, "Equivalent pay ordinarily includes the same opportunity for overtime and shift differential."

57. SEPC's Position Statement alleges that, "The employee selected for Plaintiff's previous position on the Olympus asset did not occupy that role until December 2023. The Company disputes the assertion that this candidate was not qualified for the

role. According to HR records, the employee self-identifies as a white male and is 34 years old. According to HR records, Plaintiff self-identified as White/Not Hispanic or Latino and is 59 years old."

58.     Plaintiff maintains that he was replaced by a substantially younger and less experienced and qualified candidate, Josh Showles (34-year-old male).

59.     Plaintiff does not dispute that Mr. Showles is qualified for the role, per se. Plaintiff contends, however, that he (Plaintiff) was more experienced and more qualified for the role that Mr. Showles was.

60.     SEPC's Position Statement alleges that, "Shell did not discriminate against Plaintiff due to race or age. The decision to discipline Plaintiff resulted from his behavior toward co-workers, which did not align with the Shell Code of Conduct, specifically Section 3.3: Harassment (see Exhibit C) as noted above in Section B of this position statement. As such, the decision to discipline Plaintiff was the result of a nondiscriminatory, valid business reason based on the evidence of his inappropriate behavior as described in this position statement's Background summary and responses to the Charge particulars."

61.     Plaintiff contends yet again that this allegation is misleading in that it draws conclusions retroactively that were not evidenced at the time and depicts the incident in question as more egregious than it actually was.

62.     During March 2023, no allegations of "harassment" were made against Plaintiff.

63.     Even the alleged basis for the verbal reprimand by Mr. Arrington in August 2023 (as described by SEPC) was more about encouraging Plaintiff to be respectful in

his verbal interactions, i.e., the word harassment was nowhere mentioned.

64. Moreover, as previously stated, Plaintiff was never even notified the issue would be the basis for any kind of disciplinary action until August 10, 2023 – nearly five months after the incident.

65. Finally, even if he was issued a verbal reprimand, that still did not justify action by SEPC that violated Plaintiff's FMLA-afforded right to be returned to an equivalent position, i.e., with equivalent pay.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FMLA - INTERFERENCE

66. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 65 above as if fully incorporated herein.

67. It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

68. As a result of the Defendant's interference with Plaintiff's rights to take leave pursuant to the FMLA described above, Plaintiff has suffered and continues to suffer significant lost pay and benefits.

69. The willful conduct of the Defendant is evidenced by a consciously indifferent attitude towards employee's rights under the FMLA. As a result of this conduct, liquidated damages should be assessed against the Defendant.

70. Plaintiff also seeks all other relief, at law or in equity, to which he may show himself justly entitled.

### COUNT II: VIOLATION OF THE FMLA - RETALIATION

71. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1

through 70 above as if fully incorporated herein.

72. It is unlawful for any employer to discharge or discriminate against any individual for opposing any practice made unlawful by the FMLA.

73. As a result of Defendants' retaliatory acts described above, Plaintiff has suffered and continues to suffer significant lost pay and benefits.

74. The willful conduct of Defendants is evidenced by a consciously indifferent attitude towards employee's rights under the FMLA and its subsequent retaliation against Plaintiff. As a result of this conduct, liquidated damages should be assessed against Defendant.

75. Plaintiff also seeks all other relief, at law or in equity, to which he may show himself justly entitled.

### COUNT III: VIOLATION OF TITLE VII - RACE DISCRIMINATION

76. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 75 above as if fully incorporated herein.

77. Defendant has discriminated against Plaintiff because of his race based on the facts identified above which constitutes a violation of Title VII.

78. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, axiety and emotional distress.

79. The unlawful actions of Defendant complained of above were intentional malicious, and taken in reckless disregard of the statutory rights of Plaintiff, thus giving rise to both compensatory and puntive damages pursuant to Title VII.

### COUNT IV:  VIOLATION OF 42 U.S.C. § 1981 - RACE DISCRIMINATION

80. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1

through 79 above as if fully incorporated herein.

81. The Defendant has discriminated against Plaintiff because of his race based on the facts identified above and is a violation of 42 U.S.C. § 1981.

82. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, anxiety and emotional distress.

83. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT V: VIOLATION OF THE ADEA – AGE DISCRIMINATION

84. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 83 above as if fully incorporated herein.

85. Defendant has discriminated against Plaintiff because of her age based on the facts identified above which constitute a violation of the ADEA.

86. Plaintiff has suffered lost wages and benefits as a result of Defendant's discriminatory acts.

87. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Compensatory damages;
4. Punitive damages;
5. Liquidated damages;
6. Attorney's fees;

7. Lost benefits;
8. Pre-judgment and post-judgment interest;
9. Costs and expenses; and
10. Such further relief as is deemed just and proper.

THIS the 27th day of May 2025.

          Respectfully submitted,

          James Dilwith, Plaintiff

   By: /s/Louis H. Watson, Jr.
      Louis H. Watson, Jr.  (MB# 9053)
      Nick Norris (MB# 101574)
      Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive #365
Flowood, MS 39232
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
      nick@watsonnorris.com